# UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF COLORADO

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Bankruptcy Case No. |
| MONROE GLEN MITCHEK, | ) | 08-30061-SBB |
| | ) | Chapter 7 |
| Debtor. | ) | |
| | ) | |
| _____ | ) | |
| | ) | |
| HARVEY SENDER, Chapter 7 Trustee, | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 11-01403-SBB |
| COMMUNITY STATE BANK, | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER (1) DENYING COMMUNITY STATE BANK'S MOTION FOR SUMMARY JUDGMENT (DOCKET #18); (2) GRANTING PLAINTIFF'S CROSS-MOTION FOR SUMMARY JUDGMENT (DOCKET #22): AND DEEMING MOOT PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT FILED DECEMBER 13, 2011 (DOCKET #21)**

THIS MATTER came before the Court for oral argument on Wednesday, February 1, 2012, to consider:

1. The Motion for Summary Judgment ("Bank's Motion for Summary Judgment") filed by Community State Bank ("Bank" or "Defendant") on November 29, 2011,[1] the Response and Cross-Motion for Summary Judgment ("Plaintiff's Cross-Motion for Summary Judgment") filed by Harvey Sender, Chapter 7 Trustee ("Trustee" or "Plaintiff") December 13, 2011,[2] and Defendant's Reply to Plaintiff's Response and Cross-Motion for Summary Judgment filed December 28, 2011;[3] and

---

[1] Docket #18.

[2] Docket #20 and #22.

[3] Docket #25.

>     2.      Plaintiff's Motion for Leave to File Amended Complaint filed December 13, 2011.[4]

The Court, having reviewed the pending motions and the within case file, and having heard the argument of counsel, makes its following findings of fact, conclusions of law, and enters the following Order.

## I.     Summary

The Trustee and the Bank entered into a settlement agreement to resolve the Trustee's claim that a motor vehicle lien obtained by the Bank on a vehicle owned by Monroe Mitchek, the debtor in the underlying bankruptcy case ("Debtor"). The Bank received a payoff on its loan after the Trustee and the Bank agreed to settle this matter and the Bank released its lien on the certificate of title and turned the certificate of title over to the Trustee.

The Trustee asserts that the Bank breached the settlement agreement by releasing the lien and accepting a payoff of the loan, in full, from a third-party after the settlement agreement was negotiated.[5] The Bank asserts that it performed under the settlement agreement by releasing the lien on the certificate of title and forwarding the original title to the Trustee.

For the reasons set forth herein and under the specific facts of this case, the Court concludes that the settlement agreement was breached by the Bank. Consequently, the Bank must turnover the sum of $4,465.68 representing the funds received for the loan payoff.

## II.    Findings of Fact

The following stipulated and uncontested facts were submitted by the parties in their December 27, 2011 Pretrial Statement:[6]

>     1.      On October 14, 2008, the debtor, Monroe Glen Mitchek, and his father, Glen Mitchek, executed a promissory note, security agreement, and truth-in-lending disclosure with the Defendant, Community State Bank (the "Bank"). The face amount of the note was $5,027.20. The note was to be secured by a 1999 Dodge Durango, VIN #1B4HS28Y4XF575516.

---

[4]     Docket #21.

[5]     Although not before the Court at this time, the issue of the Bank arguably violating the automatic stay (11 U.S.C. § 362(a)(3), (4) and (5), may well be dealt with at a later date and under different circumstances.

[6]     Docket #24 (these facts are stated verbatim except for some style and grammatical changes).

2.     As a result of signing the above-mentioned promissory note, Glen Mitchek, the debtor's father, was liable to Community State Bank on the promissory note.

3.     On December 16, 2008, the debtor filed his petition commencing the underlying bankruptcy.

4.     As a result of various delays, the Defendant did not submit the title and lien information on the above-mentioned Dodge Durango to the Colorado Department of Motor Vehicles until November 26, 2008.

5.     On February 20, 2009, the Trustee made demand on the Defendant for the avoidance of a preferential motor vehicle security interest and recovery of the security interest for the benefit of the bankruptcy estate. Specifically, the letter demanded an assignment of the security interest and indebtedness, payment of amounts received pursuant to that indebtedness, and proof of insurance on the Vehicle.

6.     On March 23, 2009, Defendant offered to settle the preference claim by signing over to the Trustee the certificate of title and the lien to the Dodge Durango. The Trustee waived any interest he may have had, if any, to the 1 or 2 payments made before March 23, 2009, on the loan. The offer was made by a March 23, 2009 letter to the Trustee from Wendy S. Shinn, counsel for the Bank, transmitted to the Trustee via facsimile on that date.

Ms. Shinn's offer stated:

> Community State Bank would remit to you the motor vehicle title and an assignment to the vehicle.  In exchange, Community State Bank would not be required to remit the payment received (sic) by debtor.  It is my understanding that at most, debtor has made one or perhaps two payments.  Finally, please be advised that Community State Bank does not know the whereabouts or the condition of the vehicle, nor does it know the status of the vehicle being insured.

3

7. This settlement was accepted by the Trustee. On March 25, 2009, Dawn Peters of the Trustee's office sent a letter to Wendy S. Shinn communicating his acceptance of the offer contained in her March 23, 2009 letter.

8. The Bank did not assign the vehicle title, nor any lien rights or claim, to the Trustee, but instead released the lien on the original certificate of title on March 26, 2009.

9. On March 31, 2009, Dawn Peters of the Trustee's office sent the Settlement Agreement prepared by the Trustee to Wendy S. Shinn for signature.

10. On April 3, 2009, Glen Mitchek, the debtor's father, paid the balance owed to the Defendant on the promissory note. At that time, neither the Bank nor its counsel informed the Trustee that the loan had been paid off and the lien released.

11. The payment referenced above was reflected on the payment history of the Bank.

12. On April 7, 2009, Dawn Peters of the Trustee's office sent a letter to Debtor Monroe Glen Mitchek informing him of the Settlement Agreement with the Bank, and requesting that payments be made to the Trustee. The Trustee did not hear from the Debtor, and his office sent additional letters to the Debtor on May 28 and June 16, 2009, requesting payments to the Trustee on the loan.

13. On May 28, 2009, the Trustee had not received the Settlement Agreement tendered to Wendy S. Shinn on March 31, 2009, and sent her a letter requesting that she forward the signed Settlement Agreement and payment history on the loan to the Trustee.

14. On June 16, 2009, the Trustee had still not received the Settlement Agreement tendered to Wendy S. Shinn on March 31, 2009, and Dawn Peters of his office sent her a second letter requesting that she forward the signed Settlement Agreement and payment history on the loan to the Trustee.

15. On July 8, 2009, Wendy S. Shinn sent a letter to Dawn Peters of the Trustee's office enclosing the signed

4

    Settlement Agreement and a payment history on the loan. Ms. Shinn stated in her letter that the debtor's father had paid off the loan, and further stated that in the Settlement Agreement, the Trustee had agreed not to pursue recovery from Community State Bank. Ms. Shinn also provided the Trustee with the payment history on the account, which reflected the April 3, 2009 payment in full by Glen Mitchek.

    16. The Settlement Agreement which is the subject of this case was, under applicable rules, noticed for purposes of objection, by the Trustee on the 9th day of November, 2009. No party, including the Bank, filed an objection to the Settlement Agreement.

    17. The Settlement Agreement was approved by the Court on the 4th day of December, 2009.

    18. The Bank has not turned over the $4,465.68 received for the loan payoff, nor has the Trustee received any payments from the Debtor on the loan.

### III. Issues

  The principle issues before the Court are (1) whether the Bank breached the Settlement Agreement, by accepting payoff of the loan by a third-party and releasing the motor vehicle lien, rather than assigning the lien or payment(s) on the lien to the Trustee, and (b) whether the Bank, by releasing its lien on the certificate of title, notwithstanding the payoff, was in compliance with the Settlement Agreement.[7]

### IV. Discussion

#### A. The Formation of a Contract

  The Trustee made demand on the Bank on February 20, 2009, for avoidance and recovery of the transfer of a preferential lien on the Vehicle. The Trustee's letter set forth the voidability of the lien and demanded an assignment of the security interest and indebtedness, payment of amounts received pursuant to that indebtedness, and proof of insurance on the Vehicle.

---

   [7] Intrinsic in this dispute is the fundamental principal that the subject motor vehicle likely is/was property of the Debtor's bankruptcy estate under 11 U.SC. § 541 and as is reflected in the Trustee's Second Claim for Relief. This specific issue may be addressed at a later date, time and place; it is not directly or specifically before the Court in this Motion for Summary Judgment.

In response to the Trustee's letter, the Bank's counsel, Wendy S. Shinn, sent a settlement offer to the Trustee via facsimile on March 23, 2009.[8] Her letter contained an offer to settle the avoidance claim by the Bank "signing over to the Trustee the certificate of title to the Dodge Durango" and the Trustee waiving his interest in the one or two payments made on the loan before March 23, 2009. Ms. Shinn's offer on behalf of the Bank stated:

> Community State Bank would remit to you the motor vehicle title and an assignment to the vehicle. In exchange, Community State Bank would not be required to remit the payment received (sic) by debtor. It is my understanding that at most, debtor has made one or perhaps two payments. Finally, please be advised that Community State Bank does not know the whereabouts or the condition of the vehicle, nor does it know the status of the vehicle being insured."

On March 25, 2009, Dawn Peters of the Trustee's office sent a letter to Wendy S. Shinn communicating the Trustee's acceptance of the offer contained in her March 23, 2009 letter.[9] With this exchange of letters, a contract was formed. Offers and acceptances by letter constitute an enforceable contract, even though the parties expect to execute a more formal contract in the future.[10]

The Bank and the Trustee agree that a contract was entered into and this ultimately was reduced to writing in the Settlement Agreement signed by both parties. The Trustee asserts that the Bank breached the contract by: (1) failing and refusing to turn over to the Trustee the certificate of title and all lien rights and claims it held when the agreement was entered into; (2) releasing its lien on the Vehicle prior to and rather than assigning the lien to the Trustee, (3) refusing to turn over the $4,465.68, paid by the Debtor's father on the promissory note subsequent to the Bank's agreement to assign the lien to the Trustee, and (4) failing to turn over all of the payments by, or for and on behalf of, the Debtor, to the Bank. However, the Bank denies that it breached the Settlement Agreement.

The Settlement Agreement states on the first page that the parties had a dispute as to whether the security interest in the Vehicle was a voidable transfer and whether the Trustee was entitled to recover the security interest or the value thereof from the Bank. Then, as set forth in the Bank's offer to settle the dispute, in exchange for the assignment of the lien and certificate of title on the Vehicle, the Trustee agreed to release the Bank from any claims against it relating to the security interest.

---

[8] Exhibit B to the Plaintiff's Cross-Motion for Summary Judgment.

[9] Exhibit C to Plaintiff's Cross-Motion for Summary Judgment.

[10] *Farmers Equity Co-op Creamery Ass'n v. United States,* 132 F. 2d 738, 739-740 (10th Cir. Colo. 1943); *Western Machinery Co. v. Consolidated Uranium Mines, Inc*., 247 F.2d 685, 687 (10th Cir. Utah 1957).

The promised assignment of the title and all of the rights in the collateral necessarily included any payments made pursuant to the security interest after the date of the verbal agreement. The Bank was not entitled to keep subsequent payments, including the lump sum payoff, but was specifically entitled only to file an unsecured proof of claim for the balance owed on the security interest in the Vehicle.

The parties expressly agreed by way of the Settlement Agreement that *all* rights in the motor vehicle lien and the certificate of title would belong to the Trustee, specifically:

> Community State Bank will turn over and assign to the Trustee the Vehicle title in full satisfaction of the claims of the Trustee against Community State Bank, and provide the Trustee with a payment history of the account. Community State Bank and the Trustee agree that all of the rights to the collateral will belong to the Trustee for the benefit of the bankruptcy estate and that Community State Bank or its successor in interest will be allowed to file an unsecured proof of claim for the balance owed on the security interest in the Vehicle.

Rather than turn over the payoff amount tendered after the verbal agreement, the Bank retained the funds and refused to turn them over to the Trustee. The Bank did not assign the certificate of title and the lien to the Trustee as required by the Settlement Agreement, but instead released the lien on the face of the certificate of title before sending it to the Trustee.

The unilateral actions of the Bank left the Trustee with no recovery on the avoidance claim and nothing of value–nothing, no consideration, whatsoever–from the Settlement Agreement.

### B. The Parties Intention(s) and the Clear Meaning of the Settlement Agreement

The Bank disputes the clear meaning of the Settlement Agreement, and takes the position that it is entitled to retain the payoff amount since the funds came from a non-debtor obligor on the underlying promissory note. The Tenth Circuit has described the relevant considerations in determining the intent of the parties to a contract:

> We are cognizant that it is the court's duty to construe the instrument so as to effectuate the manifest intention of the parties …." *Superior Oil Co. v. Western Slope Gas Co.*, 604 F.2d 1281, 1288-1289 (10th Cir. 1979), *quoting Ryder Truck Rental, Inc. v. Central Packing Co.*, 341 F.2d 321, 323-324 (10th Cir.), *cert. denied*, 382 U.S. 827, 86 S. Ct. 60, 15 L. Ed. 2d 71 (1965). If the terms are clear, the intent of the parties must be ascertained from the contract itself. *Brown v. American Bank of Commerce*, 79 N.M. 222, 441 P. 2d 751 (1968); *McKinney v. Davis*, 84 N.M. 352, 503

>P. 2d 332 (1972). If the contract is unambiguous, construction of the contract is a question of law and summary judgment is appropriate. *C.f. Braun & Co. v. Oklahoma Gas & Electric Co.*, 603 F.2d 132 (10th Cir. 1979); *Jaeco Pump Co. v. Inject-O-Meter Manufacturing Co.*, 467 F.2d 317 (10th Cir. 1972). A contract is ambiguous only if it is reasonably and fairly susceptible of more than one meaning; the fact that the parties disagree as to the meaning does not establish the presence of ambiguity. *Vickers v. North American Land Developments, Inc.*, 94 N.M. 65, 607 P. 2d 603 (1980); *Cain v. Nat'l Old Line Insurance Co.*, 85 N.M. 697, 516 P.2d 668 (1973).[11]

Similarly, under Colorado law, the Court must interpret a written agreement according to the intent of the parties.[12] In construing a contract, the Court should consider the subject matter, the reason it is made, the sense in which the parties naturally understood it at the time it was made, and the purpose to be accomplished.[13] After hearing argument and offers of proof with respect to the pending countervailing Motion for Summary Judgment and applying these principals, this Court can only conclude that the parties understood that the available preferential security interest - the lien on the vehicle - and any payments made under the note and security agreement, *other than the one or two made by the Debtor prior to the offer and acceptance*, would go to the Trustee for the benefit of the estate.

The March 23, 2009 letter from Ms. Shinn provided for the assignment of the vehicle title, and retention of the one or two payments made to date by the Debtor. The Trustee's purpose was to resolve the avoidance claim and recover the lien without litigation. This is evident from his February 20, 2009 demand letter to the Bank. Not unimportantly, the Bank wanted to settle as well to avoid litigation. These remedies would have been available to the Trustee pursuant to 11 U.S.C. §§544 and/or 547, 550 and 551.[14] The Court concludes that the parties understood that the lien rights and future payments would go to the Trustee, as evidenced by the March 23, 2009 letter to the Trustee from Ms. Schinn and the Trustee's demand letters to the Debtor for payments on the motor vehicle loan after the settlement with the Bank was reached.

The Trustee entered into the Settlement Agreement with the expectation that he would obtain an assignment of the lender's interest in the certificate of title and the motor vehicle lien

---

[11] *Harrison Western Corp. v. Gulf Oil Co.*, 662 F.2d 690, 694-695 (10th Cir. 1981).

[12] *Ader v. Hughes*, 570 F.2d 303 (10th Cir. 1978).

[13] *Martinez v. Continental Enterprises,* 730 P.2d 308 (Colo. 1986); *Lorenzen v. Mustard's Last Stand, Inc*., 586 P.2d 12 (Colo. 1978)

[14] This is also the basis for Plaintiff's Motion for Leave to File Amended Complaint filed December 13, 2011 (Docket #21).

and step into the Bank's shoes under the loan and receive payments pursuant to the lien, regardless of the source of the payments. In the interpretation of commercial contracts, courts impose a duty of "good faith" performance.[15] In this case, the Bank has not met this duty.

The day after the Trustee's March 25, 2009 acceptance of the Bank's settlement offer, the Bank released the motor vehicle lien rather than assigning it as agreed. Although the Trustee sent the Settlement Agreement to Ms. Shinn on March 31, 2009, Ms. Shinn delayed signing it and did not return it to the Trustee until three months later, on July 8, 2009, despite two reminders from the Trustee's office. By the time Ms. Shinn returned the signed Settlement Agreement, the Bank had long ago accepted the loan payoff and released the lien without informing the Trustee.[16]

The Bank, at the hearing on this matter on February 1, 2012, asserted that, in accord with *Morris v. St. John National Bank (In re Haberman),*[17] the Bank's position was supported by Tenth Circuit precedent. Specifically, counsel suggested that the lien is all the Trustee was entitled to. In fact, the *Haberman* decision stands for the proposition that a trustee may avoid a bank's security interest and take for the bankruptcy estate the value of the unperfected or avoided transfer. Here, this case is distinguishable from *Haberman* because of the actions of the Bank to thwart the recovery by the Trustee. Consequently, the Trustee asserts, and this Court agrees, that the amount of the sum paid by the Debtor's father to pay the loan off, or $4,465.68, is the value of the unexecuted transfer. In effect, the payoff to the Bank, itself, terminated all rights and interests that the Bank had in the motor vehicle. Moreover, it left the Trustee and the estate with no consideration whatsoever–other than a broken promise and an unenforceable piece of paper.[18]

This Court concludes that the Bank, through its counsel, delayed in providing the signed Settlement Agreement, then took the position contrary to the clear intent of the parties that the Trustee was not entitled to the payoff funds. The law of contracts is designed to protect the parties' expectations.[19] The expectation of the parties was that the Trustee would receive the Bank's avoidable lien rights and all loan payments other than the two made by the Debtor prior to March 23, 2009, as set forth in Ms. Shinn's letter of that date. The Bank and the Trustee entered into a contract embodied in the Settlement Agreement. The Bank breached the contract by accepting the payoff funds which were assigned to the Trustee under the Settlement

---

[15] *Line Drivers of International Brotherhood of Teamsters, etc. v. W. J. Digby, Inc.*, 341 F.2d 1016, 1019 (10th Cir. 1965) (citing *Ryder Truck Rental, Inc. v. Central Packing Co., Inc*. 341 F.2d 321 (10th Cir. 1965)).

[16]

[17] 516 F.3d 1207 (10th Cir. 2008).

[18] The Court also notes that the *Haberman* decision has been heavily criticized by at least one opinion outside of this Circuit. *White v. Wachovia Dealer Serv., Inc. (In re Wyatt),* 440 B.R. 204 (Bankr. D.C. 2010).

[19] *Pirke v. Hospital Corp. of America*, 483 F. Supp. 770 (D.Colo. 1980).

Agreement. The Trustee performed his part of the bargain by releasing the Bank from the avoidance claims available to the Trustee under the Bankruptcy Code.

If this Court were not to enforce the Settlement Agreement as expressly intended by the parties, the Bank and the Trustee, it would set a bad precedent for every incident a parent or a friend would pay-off a loan on behalf of a Debtor where the lien would otherwise be avoidable. It would allow for banks and other lending institutions to essentially have their cake (full payment of their lien and claim to the detriment of all other creditors) and eat it too (free from all claims and rights of the Trustee), which rights of the Trustee the Bank here implicitly and, formally, expressly acknowledged and acceded to.

### C. Turnover of Property of the Estate

The Bank argues that the funds paid by the Debtor's father to pay off the loan are not property of the estate. However, the lien claims and rights of the Bank, and the payments promised to the Trustee under the Settlement Agreement, are property of the estate, by virtue of the Settlement Agreement. "Property of the estate" includes "any interest in property that the Trustee recovers under section 550 of the Bankruptcy Code, or any interest in property that the estate acquires after the commencement of the case."[20] Under the Settlement Agreement, the Trustee was entitled to the lien rights and any amounts paid on the motor vehicle lien after the settlement was reached. This property is currently in the possession of the Bank and is not of inconsequential value or benefit to the bankruptcy estate. The Trustee is entitled to the turnover of the $4,465.68 pursuant to 11 U.S.C. §542.

### D. Attorneys' Fees and Costs under the Settlement Agreement

The Settlement Agreement provides the remedy of specific performance in the event of any party to comply with its terms. It further provides that in the event of litigation to enforce its provisions, the prevailing party shall recover reasonable attorneys' fees and costs.
There is no allegation that the Trustee breached the Settlement Agreement, and it is clear from the evidence that the Bank is in breach. As a result, the Trustee is entitled to judgment for his reasonable attorneys' fees and costs in enforcing the Settlement Agreement in this adversary proceeding.

### E. The Trustee Did Not Waive the Bank's Breach of Contract

The Bank asserts that the Trustee waived the breach by seeking Bankruptcy Court approval of the Settlement Agreement. "For waiver to be implied by conduct, the conduct

---

[20] 11 U.S.C. §541 (3) and (7).

should be free from ambiguity and clearly manifest the intention not to assert the benefit."[21] At no time did the Trustee clearly manifest an intention not to assert the benefits of the Settlement Agreement. To the contrary, the Trustee attempted to obtain those benefits by requesting payments from the Debtor and following up to obtain the signed Settlement Agreement from the Bank. Indeed, the Trustee here clearly sought to amicably, quickly and with no cost of litigation resolve the dispute and he relied on the Banks word and good faith to do so. But, unfortunately, this goal was not accomplished.

The Settlement Agreement was contingent upon approval by the Bankruptcy Court, which the Trustee agreed to endeavor to obtain. The Trustee's actions in making a motion for Bankruptcy Court approval of the agreement is further evidence of his intention to assert its benefits.

The Trustee's reasonable expectation was that the payoff funds would be turned over to him pursuant to the Settlement Agreement. Upon the Bank's refusal to perform, the Trustee brought this adversary proceeding. The Bank has produced no evidence and, there appears to be no such evidence, that the Trustee manifested any intention not to assert the benefits of the Settlement Agreement.

The Trustee is entitled to summary judgment on its claims for relief. The Court will enter judgment in favor of the Trustee and against the Bank in the amount of $4,465.68. The Trustee may submit and serve on the Bank a legally sufficient fee application and affidavit as to his attorneys' fees and costs relative to this case to the Court on or before **April 9, 2012**. The Bank may then object, in whole or in part, to an award of attorneys' fees and costs on or before **April 23, 2012**.

V.   **Order**

IT IS THEREFORE ORDERED as follows:

1. The Bank's Motion for Summary Judgment is DENIED.

2. The Trustee's Cross-Motion for Summary Judgment is GRANTED.

---

[21] *Richmond v. Grabowski*, 781 P.2d 192, 195 (Colo. App. 1989) (citing *Department of Health v. Donahue*, 690 P.2d 243 (Colo. 1984)).

   3. Judgment shall enter in favor of the Trustee and against the Bank in the amount of $4,465.68.  The Trustee shall submit an fee application and affidavit as to his attorneys' fees and costs to the Court on or before **April 9, 2012**.  The Bank may file a response to the fee application and affidavit on or before **April 23, 2012**, and the Court will deem the matter submitted at that time.

   4. In light of the Court's ruling, Plaintiff's Motion for Leave to File Amended Complaint filed December 13, 2011 is DEEMED MOOT.

   Dated this 19th day of March, 2012.

               BY THE COURT:

               _____
               Sidney B. Brooks,
               United States Bankruptcy Judge